IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEDRO VIALIZ-VEGA | : | CIVIL ACTION |
| | : | |
| v. | : | No. 10-1859 |
| | : | |
| JEROME WALSH, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                 **June 26, 2012**

Petitioner Pedro Vializ-Vega, a prisoner in the State Correctional Institution in Dallas,
Pennsylvania, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.
United States Magistrate Judge Linda K. Caracappa has issued a Report and Recommendation
(R&R) recommending the petition be dismissed as untimely.  Upon review of the R&R and upon
consideration of Vializ-Vega's objections thereto, this Court agrees Vializ-Vega's habeas petition
should be dismissed; however, the Court will dismiss the petition on the alternative ground that
Vializ-Vega's claims are procedurally defaulted and he has failed to make the requisite showing of
cause and prejudice or a miscarriage of justice.

**FACTS**

In May 2003, Vializ-Vega was convicted in the Court of Common Pleas of Berks County of
involuntary deviate sexual intercourse, sexual assault, endangering the welfare of a child, indecent
assault, indecent exposure, and corruption of minors, all arising out of his molestation of his step-
granddaughter over a period of five to six years, when the victim was between eight and fourteen
years old.  App. to Answer to Pet'n for Writ of Habeas Corpus (App.) 30.  In November 2003,
Vializ-Vega received an aggregate sentence of 10 to 20 years of incarceration.  App. 31-35.

Vializ-Vega appealed, and the Pennsylvania Superior Court affirmed his judgment of
sentence on August 11, 2004.  App. 92-100. The Pennsylvania Supreme Court denied Vializ-Vega's

petition for allowance of appeal on February 16, 2006.  App. 103.

On February 16, 2007, Vializ-Vega filed a pro se motion for post-conviction collateral relief pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. Ann. § 9541 et seq., alleging his trial counsel was ineffective for failing to call witnesses on Vializ-Vega's behalf, and also alleging he did not understand some of the interpretation provided by the court-appointed interpreter.  App. 105-13.  PCRA counsel was thereafter appointed for Vializ-Vega, and on April 18, 2008, counsel filed a "no merit letter" pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988), and *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), requesting leave of court to withdraw.[1]  The PCRA court granted counsel's motion to withdraw on May 9, 2008, and also notified Vializ-Vega of its intention to dismiss his PCRA petition pursuant to Pennsylvania Rule of Criminal Procedure 907.  Over Vializ-Vega's objection, the PCRA court dismissed his PCRA petition on June 9, 2008.  Vializ-Vega appealed the dismissal, and the Superior Court affirmed on May 12, 2009.

On June 1, 2009, Vializ-Vega submitted a one-page document styled as a "Pro-se Appe[]llant's Notice of Appeal, Regarding New Matter" to the PCRA Court.  App. 190.  In the body of the document, Vializ-Vega stated he "would like to seek leave to include a recent, New Matter,

---

[1] In her no merit letter, PCRA counsel provided additional detail regarding Vializ-Vega's claims. PCRA counsel characterized Vializ-Vega's ineffective assistance of counsel claim as challenging trial counsel's failure to present evidence regarding prior sexual abuse of the victim and failure to present certain witnesses on Vializ-Vega's behalf.  As to trial counsel's failure to call witnesses, PCRA counsel asserted Vializ-Vega had identified 14 witnesses whom trial counsel had failed to call and who, if called, would have testified regarding the prior sexual abuse of the victim, testified that Vializ-Vega was "not the sort of person" who would have committed the offenses charged, or given unspecified testimony establishing his innocence.  App. 117; *see also* App. 141 (stating counsel was ineffective for failing to call witnesses present at trial whose testimony "would have possibly changed the outcome of the verdict").  PCRA counsel characterized Vializ-Vega's remaining claim as alleging he did not understand certain papers he signed following his conviction.

(to the PCRA Court)," in light of the Pennsylvania Supreme Court's March 2009 decision in *Commonwealth v. Johnson*, 966 A.2d 523 (Pa. 2009), which he characterized as having provided some "clarification regarding Counsel's failure to 'interview' Witnesses." App. 190. The document went on to state, "IN MY Pro-se PCRA, petition I intend to provide the Name, Address, Age, and Testimony of my Witness(es) that Counsel failed to investigate, or interview." *Id.* Notwithstanding these references to a forthcoming PCRA petition, the document was styled as a notice of appeal regarding new matter, referred to Vializ-Vega as the "appe[]llant," and specifically stated, "This Motion should be Docketed as . . . A Notice of Appeal, pending the Petitioner's formal Appeal Brief." *Id.*

The PCRA court received Vializ-Vega's submission on June 24, 2009, and, construing it as a notice of appeal, forwarded it to the Superior Court on June 29, 2009.[2] App. 189-91. The docket for Vializ-Vega's case in the Court of Common Pleas does not reflect any further filings by Vializ-Vega in that court following the transmittal of his notice of appeal regarding new matter to the Superior Court. *See* App. 22-23. Rather, on September 12, 2009, Vializ-Vega filed a notice of appeal and appellate brief in the Superior Court, purporting to appeal the PCRA court's June 24, 2009, "decision" transferring his "subsequent Pro-se PCRA Petition" to the Superior Court without his "knowledge, desire or legal interest." App. 192-98. In the brief accompanying his notice of appeal, Vializ-Vega argued the PCRA court abused its discretion in treating his notice of appeal regarding new matter as a notice of appeal rather than as a PCRA petition, and requested the Superior Court to remand the case "to afford the PCRA Court the opportunity to address the merits

---

[2] Apparently, the notice was originally mailed to the Court of Common Pleas in Philadelphia, which returned the notice to Vializ-Vega, who then resubmitted it to the Court of Common Pleas in Berks County. App. 191.

of [his] PCRA Petition." App. 195.  He also argued the PCRA court violated Pennsylvania Rule of

Criminal Procedure 907 by forwarding his submission to the Superior Court without issuing a notice

of intent to dismiss advising Vializ-Vega of the defects in the submission.  Vializ-Vega asserted his

filing was timely under 42 Pa. Cons. Stat. Ann. § 9545(b)(1)(ii) because it was based on four newly

discovered exculpatory witnesses whose identities had previously been unknown and unknowable

to him, and who "[w]ould have all testified at trial for [Vializ-Vega], and explained his actual

innocence and provided an Alibi Defense."[3]  App. 194-95.  Vializ-Vega characterized the underlying

claim he wanted the PCRA court to review as one of ineffective assistance of trial and appellate

counsel for failing to investigate, interview, present, and preserve the testimony of these witnesses,

who were known or should have been known to counsel.  App. 194.

In its responsive brief, the Commonwealth agreed it appeared Vializ-Vega intended his notice

of appeal regarding new matter to be "a second PCRA petition, although improperly titled," App.

209, but argued remand was unnecessary because the petition was untimely.  On October 20, 2009,

the Superior Court quashed Vializ-Vega's appeal.  Although the court surmised Vializ-Vega's

"intent . . . was to file a supplemental petition citing newly decided case law in support of the claim

that trial counsel had failed to interview witnesses," the court found that since the trial court docket

"evidence[d] no order that would warrant the filing of a new appeal[,] . . . no appeal [could] be

taken."  App. 213 (citing Pa. R. App. P. 301).

---

[3] Although a PCRA petition generally must be filed "within one year of the date the judgment
becomes final," a later-filed petition may still be timely if the petitioner alleges and proves "the facts
upon which the claim is predicated were unknown to the petitioner and could not have been
ascertained by the exercise of due diligence," and if the petition is filed "within 60 days of the date
the claim could have been presented."  42 Pa. Cons. Stat. Ann. § 9545(b)(1) & (2).  Vializ-Vega
suggested he had learned of the four exculpatory witnesses—who he identified for the first time in
his appellate brief—within 60 days before filing his notice of appeal regarding new matter.

On April 5, 2010, Vializ-Vega filed the instant federal habeas corpus petition and an accompanying legal memorandum.  In the petition itself, Vializ-Vega alleges he was denied the right to appeal when the PCRA court sent his June 1, 2009, new PCRA petition to the Superior Court without addressing the merits of his claims.  Pet'n 8; *see also id.* at 13 (alleging the Clerk deprived Vializ-Vega of due process by "fail[ing] to process [his] PCRA and sen[ding] it to the wrong Court").  In the accompanying memorandum, Vializ-Vega argues the PCRA court should have accepted his second PCRA petition as timely because it was filed within 60 days of his discovery of the new evidence and the Pennsylvania Supreme Court decision on which his claims were based.  Pet'r's Mem. 1-4, 12.  Vializ-Vega also alleges his trial and appellate counsel were ineffective.  *Id.* at 6-10.  Although the precise contours of Vializ-Vega's ineffective assistance of counsel claim are not entirely clear from his submission, construing his papers liberally, this Court will treat the petition as raising the same ineffective assistance claim he sought to raise via a second PCRA petition, i.e., that his trial and appellate counsel were ineffective for failing to investigate, interview, present, and preserve the testimony of four exculpatory witnesses whose identifies were unknown and unknowable to Vializ-Vega at the time of trial.

**DISCUSSION**

As an initial matter, this Court notes that insofar as Vializ-Vega seeks to challenge the PCRA court's alleged mishandling of his June 1, 2009, submission, such claims of error by the PCRA court are not cognizable on federal habeas review.  *See Abu-Jamal v. Horn*, 520 F.3d 272, 297 (3d Cir. 2008) ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief."), *judgment vacated on other grounds by Beard v. Abu-Jamal*, 130 S. Ct. 1134 (2010).  Rather, "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in

the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." *Id.* (citations omitted); *see also Woodard v. Vaughn*, No. 07-5316, 2008 WL 2945382, at *4 (E.D. Pa. July 30, 2008) (holding even if state court erroneously treated petitioner's PCRA petitions as untimely second and third petitions instead of as amendments to his first petition, such "procedural error" was "not cognizable on habeas review"). Thus, Vializ-Vega's claims that the PCRA court deprived him of due process or denied him the right to appeal by treating what he intended as a second PCRA petition as a notice of appeal do not present a cognizable basis for habeas relief. Because Vializ-Vega has also alleged a claim of ineffective assistance of counsel, this Court will proceed to address the timeliness of this claim.

A federal habeas petition by a prisoner in state custody is subject to a one-year statute of limitations, which runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). This one-year limitations period is subject to statutory and equitable tolling. The limitations period is statutorily tolled during "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment

or claim is pending." *Id.* § 2244(d)(2).  The limitations period may also be equitably tolled if the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Following his conviction and sentence, Vializ-Vega pursued a direct appeal to the Superior Court and filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which was denied on February 16, 2006.  Vializ-Vega did not seek review in the United States Supreme Court; therefore, his judgment became final for purposes of the federal statute of limitations when the 90-day period for seeking such review expired on May 17, 2006.  *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (holding a conviction does not become final for purposes of § 2244(d)(1)(A) "until the 'availability of direct appeal to the state courts' and to [the Supreme Court] has been exhausted" (citations omitted)).

Although the statute of limitations for filing a federal habeas petition began to run on May 17, 2006, the statute was tolled upon the filing of Vializ-Vega's PCRA petition 275 days later on February 16, 2007, with 90 days remaining in the federal limitations period.  The Superior Court affirmed the dismissal of Vializ-Vega's PCRA petition on May 12, 2009.  Vializ-Vega did not seek review in the Pennsylvania Supreme Court, and his PCRA petition thus remained "pending" for purposes of § 2244(d)(2) until the period for seeking such review expired on June 11, 2009.  *See Stokes v. Dist. Attorney of Phila.*, 247 F.3d 539, 542 & n.1 (3d Cir. 2001) (holding a state post-conviction petition remains pending for purposes of § 2244(d)(2) while discretionary state court review may be sought, whether or not such review is sought, but not during the time in which review may be sought in the United States Supreme Court).

In the R&R, the magistrate judge concluded Vializ-Vega's habeas petition was untimely because, once his initial PCRA petition ceased to be pending in June 2009, he had only approximately three months remaining in which to file a federal habeas petition, yet he did not file the instant petition until April 2010, nearly seven months after the deadline.  The magistrate judge rejected Vializ-Vega's argument that the limitations period should also be tolled during the pendency of his notice of appeal regarding new matter, finding that even if the PCRA court should have treated the notice as a second PCRA petition, the petition would have been untimely and thus ineligible for statutory tolling.  *See Pace*, 544 U.S. at 417 (holding an untimely PCRA petition is not "properly filed" and a federal habeas petitioner is therefore not entitled to statutory tolling during the pendency of such a petition).  In so finding, the magistrate judge determined Vializ-Vega's conclusory allegations regarding newly discovered witnesses would have been insufficient to establish an exception to the PCRA's statute of limitations for claims predicated on facts that "were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa. Cons. Stat. Ann. § 9545(b)(1)(ii).

Vializ-Vega objects to this conclusion, asserting his notice of appeal regarding new matter was a second PCRA petition which invoked an exception to the statute of limitations, and arguing that had the PCRA court treated it as such and issued a "20-day notice" pursuant to Pennsylvania Rule of Criminal Procedure 907,[4] he would have been able to present his after-discovered witnesses and establish an exception to the time-bar.  *See* Pet'r's Objections ¶¶ V, VII-VIII, X-XI.

---

[4] Under Rule 907, before dismissing a PCRA petition on the papers, the court "shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal." Pa. R. Crim. P. 907(1).  A petitioner may respond to a proposed dismissal "within 20 days of the date of the notice." *Id.*

Even assuming Vializ-Vega's notice of appeal regarding new matter should have been construed as a timely second PCRA petition, however, Vializ-Vega would only be entitled to statutory tolling of the federal limitations period while this second petition was pending. *See* 28 U.S.C. § 2244(d)(2). Because Vializ-Vega did not seek further appellate review of the Superior Court's October 20, 2009, order quashing his appeal from the PCRA court's transfer of the petition, Vializ-Vega's second PCRA petition remained pending until November 19, 2009. Once the second petition was no longer pending, Vializ-Vega had only the remaining 90 days of the federal limitations period, or until February 17, 2010, to file a federal habeas petition. Thus, because the instant federal habeas petition was not filed until April 5, 2010, it would still be untimely, absent an alternative start date for the federal limitations period.

Vializ-Vega also objects to the magistrate judge's conclusion that he failed to establish a basis for equitable tolling of the federal statute of limitations, arguing the PCRA court's erroneous filing of his second PCRA petition in the Superior Court constitutes an extraordinary circumstance that prevented him from asserting his rights. *See* Pet'r's Objections ¶ XII. This argument fails for the same reason as the statutory tolling argument. Even assuming the PCRA court's handling of Vializ-Vega's second PCRA petition would constitute a sufficient basis for equitable tolling, it would toll the federal limitations period only during the pendency of that petition (or until November 19, 2010), and would thus not render Vializ-Vega's April 5, 2010, federal habeas petition timely.

Although Vializ-Vega does not invoke any of the alternative start dates for the federal limitations period, because he appears to be raising an ineffective assistance of counsel claim based on newly discovered exculpatory witnesses, it is possible the statute of limitations did not begin to run until "the date on which the factual predicate of the claim . . . could have been discovered

through the exercise of due diligence," pursuant to 28 U.S.C. § 2244(d)(1)(D).  In his petition and

supporting papers, Vializ-Vega identifies four newly discovered witnesses who he contends "were

and are willing to testify to his actual innocence."  Pet'n 8; *see also* Pet'r's Objections to Resp'ts'

Answer (ECF No. 4) 4 (stating newly discovered witnesses "[w]ould have all testified at trial for

[petitioner], and explained his actual innocence and provided an Alibi Defense").  While Vializ-Vega

suggests he learned of these witnesses within 60 days of filing his second PCRA petition on June

1, 2009, *see* Pet'r's Mem. 1-2, he does not indicate the date he first became aware of these witnesses,

nor does he explain how they would establish his innocence or an alibi defense or why he could not

have discovered them sooner.  As a result, Vializ-Vega arguably has failed to establish a basis for

using an alternate start date.  *See Freeman v. Zavaras*, No. 11-1955, 2011 WL 5864094, at *5 (D.

Colo. Nov. 22, 2011) (rejecting petitioner's argument that federal habeas statute of limitations began

to run when he discovered the alleged *Brady* material on which his claim was based, where petitioner

failed to explain the circumstances surrounding his discovery of such material and thus did not

demonstrate the material could not have been discovered earlier through the exercise of due

diligence), *certificate of appealability denied*, 2012 WL 753651, at *5 (10th Cir. Mar. 9, 2012);

*Pittman v. Kelly*, No. 09-675, 2009 WL 2877032, at *2 (E.D. Va. Sept. 3, 2009) (holding petitioner

failed to establish the federal habeas statute of limitations began to run on the date he discovered

exculpatory evidence on which his claim was based where petitioner identified the date on which

he discovered the evidence but "fail[ed] to indicate what exculpatory evidence he found, or how it

could not have been discovered prior to that date"), *certificate of appealability denied*, 363 F. App'x

234 (4th Cir. 2010).  This Court need not decide this issue, however, as Vializ-Vega's petition must

be dismissed because his claim is procedurally defaulted.

10

Prior to seeking federal habeas relief, a petitioner must first exhaust the remedies available in state court by fairly presenting "both the factual and legal substance of his [federal] claims in the state court's highest tribunal." *Rolan v. Coleman*, 680 F.3d 311, 317 (3d Cir. 2012). If a petitioner has failed to exhaust a claim and it is clear the claim would now be procedurally barred under state law, the exhaustion requirement is excused. *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002). In such circumstances, however, the unexhausted claim is procedurally defaulted, and a federal court may not consider the merits of the claim unless the petitioner "makes the standard showing of 'cause and prejudice' or establishes a fundamental miscarriage of justice." *Id.* at 252-53 (quoting *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)); *see also Rolan*, 680 F.3d at 317 ("Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue . . . .").

The Commonwealth argues Vializ-Vega's claim that trial and appellate counsel were ineffective for failing to investigate and present testimony from the four newly discovered witnesses identified in his papers is unexhausted. This Court agrees. Although Vializ-Vega raised an ineffective assistance claim based on his trial counsel's failure to call certain unidentified witnesses who allegedly would have established his innocence in his initial PCRA petition, the claim at issue in the instant habeas petition concerns four newly discovered witnesses and thus could not have been raised in his earlier PCRA petition. In June 2009, Vializ-Vega attempted to present his claim regarding these new witnesses to the PCRA court via his notice of appeal regarding new matter. After the PCRA court forwarded the notice to the Superior Court, however, Vializ-Vega filed a brief in the Superior Court challenging only the propriety of the PCRA court's failure to file the notice as a second PCRA petition. Vializ-Vega did not argue the merits of his claim based on the newly

discovered witnesses to the Superior Court; rather, he asked the court to remand the case to permit

the PCRA court to consider his second PCRA petition in the first instance.[5]  In these circumstances,

Vializ-Vega did not fairly present his ineffective assistance of counsel claim to the Superior Court.

*See Lines*, 208 F.3d at 161-62 (holding claims raised on direct appeal but not pursued in petition to

the Pennsylvania Supreme Court were not fairly presented to that court).

As noted, under Pennsylvania law, a PCRA petition must generally be filed "within one year

of the date the judgment becomes final."  42 Pa. Cons. Stat. Ann. § 9545(b)(1).  Although there is

an exception for claims predicated on facts that "were unknown to the petitioner and could not have

been ascertained by the exercise of due diligence," *id.* § 9545(b)(1)(ii), a petition raising such a claim

must be filed "within 60 days of the date the claim could have been presented," *id.* § 9545(b)(2).

In this case, Vializ-Vega attempted to present his claim based on newly discovered evidence on June

1, 2009, and it is therefore clear any new PCRA petition based on this same evidence would be

untimely at this point.  Thus, because Vializ-Vega can no longer obtain relief in the state courts, his

claim based on the newly discovered witnesses is procedurally defaulted.  *See Peters v. Folino*, 450

F. App'x 127, 131 (3d Cir. 2011) (holding petitioner's unexhausted claims were procedurally

defaulted where petitioner was no longer eligible to gain state relief because any further PCRA

petition would be untimely); *Lines*, 208 F.3d at 164-66 (same).

To overcome this procedural default and enable this Court to review the merits of his claim,

Vializ-Vega must "show 'cause and prejudice' for the procedural default or that a 'miscarriage of

justice' will occur absent review."  *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004).  To

---

[5] Although the Commonwealth invited the Superior Court to decline to remand the case on the ground the petition was untimely, the court did not address this argument but instead quashed the appeal because there was no underlying trial court order from which an appeal could be taken.

establish cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).   To show prejudice, the petitioner must demonstrate the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Crocker v. Klem*, 450 F. App'x 136, 138 (3d Cir. 2011) (quoting *Murray*, 477 U.S. at 494).  With respect to the miscarriage of justice exception, "[a]n allegation of 'actual innocence,' if credible is one such 'miscarriage of justice' that enables courts to hear the merits of the habeas claim." *Hubbard*, 378 F.3d at 338.  However, to rely on this exception, a petitioner must (1) "support his allegations of constitutional error with 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial,'" *id.* at 339-40 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)), and (2) "show it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition," *id.* at 339 (quoting *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)) (internal quotation marks and further citation omitted).

Although Vializ-Vega does not specifically address the cause and prejudice or miscarriage of justice exceptions to the procedural default rule, his allegations regarding the PCRA court's mishandling of his second PCRA petition could arguably establish cause for his failure to fairly present his claim based on the newly discovered witnesses to the Pennsylvania courts. *See Coleman*, 501 U.S. at 753 (suggesting "a showing . . . that 'some interference by officials' . . . made compliance impracticable, would constitute cause [for a procedural default]" (quoting *Murray*, 477 U.S. at 488)); *St. George v. Dist. Attorney of Phila.*, No. 00-1716, 2011 WL 3515133, at *4 (E.D.

Pa. Aug. 10, 2011) (holding petitioner had established cause for his failure to file a timely PCRA

petition where state officials failed to notify petitioner his direct appeal was untimely, having

mistakenly concluded the notice of appeal pertained to petitioner's other criminal case, and thus

failed to put petitioner on notice to apply for post-conviction relief).[6] This Court need not decide this

issue, however, for even if Vializ-Vega has made a sufficient showing of cause, he has not shown

prejudice.

Where, as here, "the underlying error is premised on an ineffective assistance of counsel

claim, 'prejudice under the *Strickland [v. Washington]* test is sufficient to establish prejudice to

relieve the procedural impediment.'" *St. George*, 2011 WL 3515133, at *4 (quoting *Mincey v. Head*,

206 F.3d 1106, 1147 n.86 (11th Cir. 2000)). Thus, to establish prejudice, Vializ-Vega must

"demonstrate 'a reasonable probability that the result would have been different but for the

professional errors.'" *Whitney*, 280 F.3d at 258 (quoting *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d

Cir. 1994)). Vializ-Vega has not done so here. In his petition and supporting papers, Vializ-Vega

alleges he has learned of four previously unknown witnesses who, had they been contacted by his

attorney, would have testified on his behalf at trial and "explained his actual innocence and provided

an Alibi Defense." Pet'r's Objections to Resp'ts' Answer 4. Although he asserts this newly

discovered evidence "is 'EXCULPATORY,' in nature and would have changed the outcome of the

---

[6] It is not clear whether the PCRA court's actions with respect to Vializ-Vega's notice would
constitute the kind of governmental interference that would establish cause. While Vializ-Vega
strenuously argues his notice of appeal regarding new matter was in fact a second PCRA petition,
he captioned the filing as a notice of appeal and specifically instructed the Clerk of Court to docket
the filing as "A Notice of Appeal, pending the Petitioner's formal Appeal Brief." App. 190.
Moreover, while the body of the notice references Vializ-Vega's intention to file a PCRA petition,
unlike his earlier pro se PCRA petition, the notice does not include most of the information required
to be in a PCRA petition. *See* Pa. R. Civ. P. 902 (specifying information to be included in a PCRA
petition). As noted, however, this Court need not decide this issue.

trial, (had it been known)," Pet'r's Mem. 1-2; *see also id.* at 11, he provides no factual support for this assertion.  He does not describe the content of the newly discovered witnesses' testimony, does not explain how any of these witnesses would (or could) establish his innocence, and does not even disclose the nature of the alibi he claims they would establish.  Vializ-Vega has thus failed to show that, had his attorney properly investigated the case and identified and called these witnesses, there is a reasonable probability their testimony would have altered the outcome of the trial.  *See Palmer v. Hendricks*, 592 F.3d 386, 394-96 (3d Cir. 2010) (holding petitioner failed to make an adequate showing of prejudice from his counsel's errors in failing to advise petitioner of his right to testify where petitioner alleged, had he been properly advised, he would have testified and would have addressed the defense of self-defense, but provided no information about the facts to which he would have testified); *D'Amario v. United States*, 403 F. Supp. 2d 361, 372 (D.N.J. 2005) ("Prejudice resulting from ineffective assistance of counsel cannot be based on mere speculation as to what witnesses might have said."); *cf. Lewis v. Horn*, 581 F.3d 92, 107 (3d Cir. 2009) (rejecting claim that counsel was ineffective for failing to call potential alibi witnesses where petitioner did not "present[] any affidavits describing what those witnesses would have testified about").  Moreover, because Vializ-Vega has not made a plausible showing of prejudice, an evidentiary hearing is not warranted in this case.  *See Palmer*, 592 F.3d at 394-96 (holding petitioner was not entitled to an evidentiary hearing on his ineffective assistance claim where his "petition contain[ed] no factual matter regarding *Strickland*'s prejudice prong," apart from a conclusory statement about the defense to which petitioner's testimony would have been directed, but for his counsel's error); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 & n.12, 301 (3d Cir. 1991) (holding petitioner was not entitled to an evidentiary hearing regarding his counsel's alleged ineffectiveness for failing to call witnesses to

15

establish a diminished capacity defense based on "vague and conclusory allegations that some unspecified and speculative testimony might have established his defense"); *D'Amario*, 403 F. Supp. 2d at 372 (denying ineffective assistance claim challenging counsel's failure to call certain witnesses without an evidentiary hearing where petitioner "failed to provide any supporting documentation, in the form of affidavits or otherwise, detailing what the . . . witnesses would have said").

Vializ-Vega also has not established a miscarriage of justice to excuse his procedural default. As an initial matter, he has failed to come forward with "new reliable evidence" suggesting he is actually innocent, as is "almost always required to establish actual innocence." *United States v. Davies*, 394 F.3d 182, 191 (3d Cir. 2005) (citation omitted).[7]  In addition, he has made no showing it is more likely than not that no reasonable juror would have convicted him.

Because Vializ-Vega's ineffective assistance of counsel claim is procedurally defaulted and he has not demonstrated either prejudice or a miscarriage of justice, this Court cannot consider the merits of his claim, and his habeas petition must be dismissed.  Moreover, because Vializ-Vega has failed to make a substantial showing of the denial of a constitutional right, this Court concludes there is no basis for a certificate of appealability.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez

Juan R. Sánchez, J.

---

[7] Although the Third Circuit has recognized a petitioner may establish a claim of actual innocence without such evidence when the petitioner can "point[] to post-conviction decisions 'holding that a substantive criminal statute does not reach [his] conduct,'" *id.* (quoting *Bousley v. United States*, 523 U.S. 614, 620 (1998)), this exception is inapplicable here.